# 21-3261

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EDWARD MIGHTY,

PETITIONER-APPELLANT,

-vs-

MARK WILLIAMS,

RESPONDENT-APPELLEE.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO AT YOUNGSTOWN

**Appeal of an opinion and order denying Edward Mighty's petition for release pursuant to 28 U.S.C. § 2241**

### DISTRICT COURT DOCKET NO.: 4:20-cv-02188

# BRIEF FOR PETITIONER-APPELLANT EDWARD MIGHTY

EASTON THOMPSON
KASPEREK SHIFFRIN, LLP
By: Donald M. Thompson
Counsel for the Petitioner
16 West Main Street, Suite 243
Rochester, New York 14614
(585) 423-8290

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*Banks v. Rozum*, 639 Fed.Appx. 778 [3rd Cir. 2016] . . . . . . . . . . . . . . . . . . . . . . 10

*Comer v. Cisneros*, 37 F.3d 775 [2nd Cir. 1994] . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Crawford v. Cuomo*, 796 F.3d 252 [2nd Cir. 2015] . . . . . . . . . . . . . . . . . . . . . . . 10

*Cruz v. Beto*, 405 U.S. 319 [1972] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Estelle v. Gamble*, 429 U.S. 97 [1976]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Farmer v. Brennan*, 511 U.S. 825 [1994] . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9

*Gregg v. Georgia*, 428 U.S. 153 [1976]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Haines v. Kerner*, 404 U.S. 519 [1972] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hardeman v. Curran*, 933 F.3d 816 [7th Cir. 2019] . . . . . . . . . . . . . . . . . . . . . . . 7

*Helling v. McKinney*, 509 U.S. 3 [1993] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

*Hudson v. McMillan*, 503 U.S. 1 [1992] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Bishop*, 404 F.2d 571 [8th Cir. 1968] . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Johnson v. Glick*, 481 F.2d 1028 [2nd Cir.],
*cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 [1973] . . . . . . . . . . . . . . . 9

*Keenan v. Hall*, 83 F.3d 1083 [9th Cir. 1996]. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kingsley v. Hendrickson*, 576 U.S. 389 [2015] . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*LeMaire v. Maass*, 745 F.Supp. 623 [D. Or. 1990] . . . . . . . . . . . . . . . . . . . . . . . 11

*Lewis v. Downey*, 581 F.3d 467 [7th Cir. 2009] . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Mammana v. Barben*, 2021 WL 2026847 [3rd Cir. 2021] . . . . . . . . . . . . . . . . . . 10

*Mays v. Dart*, 974 F.3d 810 [7th Cir. 2020] . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Miranda v. Cty. of Lake*, 900 F.3d 335 [7th Cir. 2018] . . . . . . . . . . . . . . . . . . . . . 6

*Overton v. Bazzeta*, 539 U.S. 126 [2003]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 [1987] . . . . . . . . . . . . . . . . . . . . . . . 9

*Rhodes v. Chapman*, 452 U.S. 337 [1981]. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Stewardson v. Cass County*, 2021 WL 878726 [N.D. Indiana 2021] . . . . . . . . . 6, 7

*Swain v. Junior*, 961 F.3d 1276 [11th Cir. 2020] . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trop v. Dulles*, 356 U.S. 86 [1958] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Cambio Exacto, S.A.*, 166 F.3d 522 [2nd Cir. 1999] . . . . . . . . . . 2

*United States v. Ghailani*, 733 F.3d 29 [2nd Cir. 2013] . . . . . . . . . . . . . . . . . . . . 2

*United States v. Rubenstein*, 403 F.3d 93 [2nd Cir. 2005]
*cert den*, 546 U.S. 876 [2005] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Urbina v. Thoms*, 270 F.3d 292 [6th Cir. 2001] . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson v Williams*, 961 F.3d 829 [6th Cir. 2020] . . . . . . . . . . . . . . . . . . . 1, 3-5, 7

*Wilson v. Seiter*, 501 U.S. 294 [1991] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Federal Statutes**

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2253 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Federal Constitution**

United States Constitution, Eighth Amendment . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

United States Constitution, Fourteenth Amendment . . . . . . . . . . . . . . . 7, 8, 10, 14

**State Cases**

*Spicer v. Williamson*, 132 S.E. 291 [N.C. 1926] . . . . . . . . . . . . . . . . . . . . . . . . 8

## JURISDICTIONAL STATEMENT

Petitioner Edward Mighty appeals the Opinion and Order of the district court (Gwin, J.) dated March 2, 2021 denying his petition seeking relief pursuant to 28 U.S.C. § 2241.  On March 10, 2021, petitioner filed a timely notice of appeal.  The district court had jurisdiction over this case pursuant to 28 U.S.C. § 2241.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 2253.

## ISSUE PRESENTED FOR REVIEW

Whether the district court erred when it dismissed the petition on Eighth Amendment grounds based on petitioner's failure to demonstrate that respondent subjectively disregarded the danger to petitioner from COVID in the prison setting (*see Wilson v. Williams*, 961 F.3d 829 [6[th] Cir. 2020]) without considering whether the conditions to which petitioner was subjected were objectively unreasonable in violation of the Fourteenth Amendment.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

On September 28, 2020, Edward Mighty filed a pro se emergency petition in the United States District Court for the Eastern District of Ohio seeking habeas corpus relief pursuant to 28 U.S.C. § 2241.  He argued that his continued confinement was cruel and unusual in violation of the Eighth Amendment based on the "extraordinary and compelling circumstances" of the COVID-19 pandemic and his heightened risk for infection from COVID-19 in the prison setting given his compromised medical condition.  He asserted that as of November 27, 2020, nine inmates in FCI Elkton where he is confined had died of COVID-19 and another 939

1

inmates had tested positive for the virus.  Mr. Mighty cited cases from other Circuits noting the increased danger of infection in prison settings (District court record entry number, hereafter "RE," 7, 3).   Mr. Mighty thereafter filed three motions to supplement his petition, which were unopposed (RE 4, 8, 9).

On November 25, 2020, respondent Mark Williams filed an answer opposing the relief requested on various grounds (RE 6).

On February 18, 2021, Magistrate Judge Jonathan D. Greenberg issued a report and recommendation granting petitioner's motions to supplement his petition and dismissing the petition (RE 11).

On March 2, 2021, the district court (Gwin, J.) issued an opinion and order adopting the magistrate judge's report and recommendation and dismissing the petition for the reasons cited in the report and recommendation (RE 15).

Mr. Mighty thereafter filed a timely notice of appeal (RE 18).

Legal determinations made by the district court are reviewed *de novo* but findings of fact are reviewed for clear error (*see e.g. United States v. Cambio Exacto, S.A.*, 166 F.3d 522 [2nd Cir. 1999]; *Comer v. Cisneros*, 37 F.3d 775, 787 [2nd Cir. 1994]; *United States v. Rubenstein*, 403 F.3d 93, 99 [2nd Cir. 2005] *cert den*, 546 U.S. 876 [2005]), as are left to the exercise of the district court's discretion (*United States v. Ghailani*, 733 F.3d 29, 44 [2nd Cir. 2013]).

## SUMMARY OF ARGUMENT

The lower court erred when it required Mr. Mighty to satisfy the Eighth Amendment test for cruel and inhuman punishment where the circumstances that Mr.

Mighty objected to do not fall within the constitutional framework for "punishment," since the effects of the pandemic were not imposed by a judge or jury (or even, a jailer). Rather, Mr. Mighty's complaint describes a violation of the government's basic obligation to provide humane conditions of confinement.

Thus, the district court erred when it dismissed Mr. Mighty's claims on Eighth Amendment grounds based on his failure to demonstrate that respondent subjectively disregarded the danger to him of exposure to COVID in the prison setting (*see Wilson v. Williams*, 961 F.3d 829 [6th Cir. 2020]). This Circuit's application of the same Eighth Amendment standard for cruel and inhuman treatment to similar claims by pretrial detainees, who may not be punished at all whether such punishment is cruel and inhuman or otherwise, further demonstrates the poor fit of an Eighth Amendment test to the inevitable consequences of the coronavirus pandemic.

The district court's order should therefore be vacated and the case remitted to the district court for consideration of whether the conditions of Mr. Mighty's continued confinement are objectively unreasonable, the standard applied for violations of the Due Process Clause of the Fourteenth Amendment by the Seventh Circuit to circumstances not involving "punishment," such as conditions of confinement for pretrial detainees. Mr. Mighty contends that this more encompassing objective unreasonableness test is the appropriate standard for any detainee (whether convicted or not) who has alleged circumstances which may not be classified as "punishment" under the Eighth Amendment.

3

## ARGUMENT

The district court held that Mr. Mighty's objection to the conditions of his confinement required that he demonstrate that respondent Williams acted with deliberate indifference to those conditions in violation of the Eighth Amendment's prohibition against cruel and unusual punishment (*see Wilson v. Williams*, 961 F.3d 829 [6th Cir. 2020]). The court held that pursuant to *Wilson*, Mr. Mighty's Eighth Amendment claim required him to establish both an objective and a subjective component: "The former requires a petitioner to show that he is 'incarcerated under conditions posing a substantial risk of serious harm' . . . [while] [t]he latter requires a showing that prison officials "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" (RE 15, 2 quoting *Wilson* at 839-40 and *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

In other words, a petitioner must show "that he is incarcerated under conditions posing a substantial risk of serious harm" *Farmer v. Brennan, supra* at 834 (1994) *and* that a prison official is aware of the "excessive" risk to his health or safety and "disregards that risk by failing to take reasonable measures to abate it" (*id*. at 847). On the other hand, an official may not be held liable if he responded reasonably to a known risk, even if the harm ultimately was not averted (*id.* at 826).

The lower court found, as did this Court in *Wilson*, that "while the harm imposed by COVID-19 on inmates at Elkton 'ultimately [is] not averted,' the BOP has 'responded reasonably to the risk' and therefore has not been deliberately

4

indifferent to the inmates' Eighth Amendment rights" (*id.* at 841, quoting *Farmer*, 511 U.S. at 844).

The lower court went on to find that "Petitioner Mighty has satisfied the objective component by showing the heightened COVID-19 risk inmates face. But, also as in *Wilson*, Mighty has failed to show that FCI Elkton officials subjectively disregarded inmate COVID-19 risk" (RE 15, 3). The court reasoned that although "federal inmates remain in objective danger while COVID-19 circulates in federal prisons, Bureau of Prisons officials' diligent efforts to follow CDC Guidelines and expeditiously vaccinate inmates shows that prison officials have not subjectively disregarded that danger . . . [thus,] Petitioner Mighty cannot satisfy the subjective component of an Eighth Amendment claim" (RE 15, 4). Based on this finding, the court dismissed Mighty's petition.

In *Wilson v. Williams*, 961 F.3d 829, 839-40 [6th Cir. 2020] this Court, applying an Eighth Amendment standard to the inmate petitioners' claims that respondents failed during the COVID-19 pandemic to create safe conditions, held that

> The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer v. Brennan*, 511 U.S. 825, 832 [1994] [first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 [1981], then quoting *Helling v. McKinney*, 509 U.S. 3, 31 [1993]). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment" (*id.* at 828).

> The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id.* at 834, 114 S.Ct. 1970; *Helling*, 509 U.S. at 35-37, 113 S.Ct. 2475. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114

5

S.Ct. 1970. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. 1970. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836, 114 S.Ct. 1970. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970.

By contrast, in the Seventh Circuit, whether a pretrial detainee's conditions of confinement violate constitutional requirements is analyzed under the Due Process Clause of the Fourteenth Amendment (*see Mays v. Dart*, 974 F.3d 810, 819 [7th Cir. 2020]) because " . . . a pretrial detainee . . . cannot be punished at all, which the Eight Amendment allows for prisoners, much less can he be punished 'maliciously and sadistically' (*Kingsley*, 576 U.S. at 400-01)" (*Stewardson v. Cass County*, 2021 WL 878726 at *7 [N.D. Indiana 2021]). Because the Fourteenth Amendment presents a lower bar, where a claimant alleges an Eighth Amendment violation, he necessarily also alleges a Fourteenth Amendment violation (*id.*; *see also Lewis v. Downey*, 581 F.3d 467, 475 [7th Cir. 2009] ["anything that would violate the Eighth Amendment would also violate the Fourteenth Amendment"]).

In *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 [7th Cir. 2018], the Seventh Circuit ruled that pretrial detainees' claims of inadequate care are subject to the objective unreasonableness test set forth in *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 [2015] [pretrial detainee need not demonstrate that the complained-of actions arose from deliberate indifference, only objective unreasonableness]) and are

6

therefore addressed under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment's more exacting test for cruel and unusual punishment (*see Hardeman v. Curran*, 933 F.3d 816, 823 [7th Cir. 2019] [citing *Kingsley*, 576 U.S. at 396-97]). Under the Fourteenth Amendment standard, a detainee must show only that the complained-of acts were objectively unreasonable based on totality of the facts and circumstances his case, rather than demonstrating deliberate indifference (*Mays v. Dart*, 974 F.3d 810, 819 [7th Cir. 2020] citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 [2015]; *see also Stewardson v. Cass County*, 2021 WL 878726 at *5 [N.D. Indiana 2021]).

The Seventh Circuit noted that this Court and the Eleventh Circuit have recently addressed condition of confinement claims involving COVID-19 in prison settings, but "[t]hese Circuits, however, apply an Eighth Amendment deliberate indifference standard to [even] pretrial detainee conditions of confinement claims rather than the objectively unreasonable claim that we apply, and thus focus on a subjective element that is not at issue here" (*Mays v. Dart*, 974 F.3d 810, 820 n.1 [7th Cir. 2020], citing *Wilson v. Williams*, 961 F.3d 829 [6th Cir. 2020] and *Swain v. Junior*, 961 F.3d 1276 [11th Cir. 2020]).

The Seventh Circuit holds that the Eighth Amendment's prohibition on punishment that is cruel and inhuman is inapplicable to pretrial detainees, who cannot be punished at all. That Circuit applies the Fourteenth Amendment Due Process Clause objectively-unreasonable standard to claims of pretrial detainees, whereas both this Circuit and the Eleventh Circuit apply the Eighth Amendment standard to

7

both pretrial detainees and convicted prisoners. Mr. Mighty contends that dismissal of his petition based on application of the higher, Eighth Amendment test that requires proof of a subjective prong, without considering the more encompassing Fourteenth Amendment purely objective totality of the circumstances standard.

As the Seventh Circuit noted, pre-conviction, the presumption of innocence applies, so any mistreatment or failure to adequately protect may not be excused or justified as a punishment component of any legitimately-imposed sentence. Rather, there is no constitutional basis to punish pre-conviction/possibly innocent detainees at all. Post-conviction, punishment is permitted so long as it does not violate the Eighth Amendment prohibition against cruel and unusual punishment. But that argument only applies to actions that fall within the constitutional definition of "punishment" and not to those whose claims do not relate to conduct within the constitutional parameters of "punishment."

In *Estelle v. Gamble*, Justice Marshall, quoting then-Judge Blackmun's 1968 decision holding whipping unconstitutional, explained that the Eighth Amendment embodied "broad and idealistic concepts of dignity, civilized standards, humanity, and decency" (*Estelle v. Gamble*, 429 U.S. 97, 102 [1976] quoting *Jackson v. Bishop*, 404 F.2d 571, 579 [8th Cir. 1968]; *see also Trop v. Dulles*, 356 U.S. 86 [1958]). Prohibited punishments were not limited to "physically barbarous" treatment but could also involve withholding medical treatment resulting in "pain and suffering which no one suggests would serve any penological purpose" (*Estelle*, 429 U.S. at 103; *see also Spicer v. Williamson*, 132 S.E. 291, 293 [N.C. 1926] [common law duty

"to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself" cited at *id.* 104), finding that "deliberate indifference to serious medical needs" violates the Eighth Amendment (*id.* at 110 n.3 [Stevens, J., dissenting]).

To be constitutionally permissible, punishment must be administered with purposefulness, deference, and boundaries on state and federal actors. In this regard, punishment must be predicated on licit reasons and may not be "totally without penological justification" (*see e.g. Gregg v. Georgia*, 428 U.S. 153, 183 [1976] [Stewart, J., joined by Powell & Stevens, J.J.] [plurality opinion]). Permissible "penological purposes" include efforts to deter, express approbation, be retributive, incapacitate, rehabilitate, to ensure community (and, in prisons, institutional) safety, and cost conservation (*see e.g. Rhodes v. Chapman*, 452 U.S. 337, 352 [1981]; *Overton v. Bazzeta*, 539 U.S. 126, 133 [2003]; *O'Lone v. Estate of Shabazz*, 482 U.S. 342 [1987]; *see also* Resnik, J., *(Un)Constitutional Punishments: Eighth Amendment Silos, Penological Purposes, and People's "Ruin,"* 129 Yale L.J. Forum 365 [2020]).

In *Farmer v. Brennan*, 511 U.S. 825, 832 [1994] the Supreme Court held that federal prison officials are duty-bound to "provide humane conditions of confinement." In *Wilson v. Seiter*, 501 U.S. 294, 303 [1991] the Court ruled that the conditions of a prisoner's confinement include the food, clothing, medical care, and safety that he receives.

"The thread common to all Eighth Amendment prison cases is that 'punishment' has been deliberately administered for a penal or disciplinary purpose" (*Wilson v. Seiter*, 501 U.S. 294, 300 (1991) (quoting *Johnson v. Glick*, 481 F.2d 1028,

1032 [2nd Cir.], *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 [1973]). But the "punishment" that the Eighth Amendment prohibits from being cruel and unusual is imposed by judges or juries, not jailers (*Helling v. McKinney*, 509 U.S. 25, 39 [1993] [Thomas, J., dissenting]; *see also Hudson v. McMillan*, 503 U.S. 1, 18 [1992] [Thomas, J., dissenting]).  In other words, to be subject to an Eighth Amendment cruel and unusual under analysis, the "punishment" meted out must be imposed by a judge or jury and may not advance any legitimate penological or disciplinary purpose.

The effects of the coronavirus in the prison setting that Mr. Mighty complains of – not imposed by a judge or jury (or even by the jailer) and which have no relationship to any of the recognized goals of a criminal justice sentence – are not "punishment" properly subjected to an Eighth Amendment cruel and inhuman treatment analysis and the two-part objective/subjective test applied by the lower court.

A condition that poses a risk of harm to a prisoner, such as housing that is unhygienic or unbearably cold for example, is a condition that serves no penological purpose, as is a condition that deprives a prisoner of adequate medical care or protection from violence (*see Mammana v. Barben*, 2021 WL 2026847, *7 [3rd Cir. 2021]; *see also Banks v. Rozum*, 639 Fed.Appx. 778 [3rd Cir. 2016] ["A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment"]; *Crawford*

*v. Cuomo*, 796 F.3d 252, 257 [2ⁿᵈ Cir. 2015] [same]; *Keenan v. Hall*, 83 F.3d 1083 [9ᵗʰ Cir. 1996] [no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination; practice found unconstitutional]; *LeMaire v. Maass*, 745 F.Supp. 623, 636 [D. Or. 1990] [same], vacated on other grounds, 12 F.3d 1444, 1458-59 [9ᵗʰ Cir. 1993]).

But the effects of the pandemic that Mr. Mighty complains of are unlike the affirmative abuses noted above – acts designed to (that actually did) unnecessarily exacerbate the conditions of confinement. The pandemic is also unlike acts of omission such as lack of adequate medical care or protection form inmate violence, which have the same affect. Rather, as Mr. Mighty noted in the lower court, the effects of the COVID-19 pandemic in the prison setting have been and continue to be "extraordinary and compelling;" a once in a lifetime plague event not susceptible to previously invoked Eighth Amendment analysis which examines prison officials' causation and amelioration of the claimed harm that is within their control, not the case here.

In *Why Lockdowns Can't Protect People in Prison From Deadly Viruses*, The Crime Report, Center on Media and Justice at John Jay College [6/15/21], Annalena Wolcke recently reported on why prison officials, despite good intentions and aggressive measures, lack the ability to effectively control the spread of the pandemic in the prison setting:

> The National Commission on COVID-19 and Criminal Justice found that case rates among incarcerated people were more than four times as high as those of the general public, and the death rate was twice as high.

11

A new report by CalPROTECT (California Prison Roadmap for Targeting Efforts to Address the Ecosystem of COVID Transmission) explains why prison-wide lockdowns failed so drastically at protecting incarcerated people from Covid-19. Even when people are physically separated from one another in solitary confinement conditions, prison ventilation and air filtration systems are simply not built for stopping a deadly virus . . .

The problems were clear: Window-less cells. Ventilation filters below minimum efficiency ratings. Pressure imbalances. Low air exchange rates. Lack of routine maintenance. Missing toilet lids. All contributed to infected aerosols spreading from one cell to the next, from the cells to a common area, from the common area to another tier, and from one prison building to another.

Under these circumstances, as the CalPROTECT report goes on to explain, the most effective measure to slow the spread of the virus inside prisons is immediate decarceration (*id.*), the relief Mr. Mighty sought in the district court.

Leaving constitutional analysis aside, there is no logical reason for greater protections for pre-trial detainees who, if not convicted, are released from custody more quickly, while post-conviction inmates may be subject to exponentially longer periods of confinement and therefore arguably require more, not less, protection. There was no analysis below (or by this Court in *Wilson*) as to why different standards are permitted for the protection of pre- vs post-conviction detainees, where the action being addressed does not fit within the constitutional framework for "punishment."

As discussed above, there is no principled reason for the application of differing constitutional standards to the claims of pre-conviction detainees and post-conviction inmates. At the same time, there is no basis to apply an Eighth Amendment standard for cruel and inhuman punishment to pre-trial detainees, for

whom there is no constitutional justification for any punishment at all. Thus, if a single standard is to be applied, it must necessarily by the Fourteenth and not the Eighth Amendment standard.

The lower court correctly held that "[b]ecause [petitioner] is proceeding pro se, 'his pleadings are held to a less stringent standard than those prepared by an attorney' (*Urbina v. Thoms*, 270 F.3d 292, 295 [6th Cir. 2001] [citing *Cruz v. Beto*, 405 U.S. 319 [1972]; *Haines v. Kerner*, 404 U.S. 519 [1972])" [citations omitted], however made no accommodation for the added burden of the two-part Eighth Amendment standard on a pro se inmate. He would virtually never be in position given lack of resources to meet the subjective prong of the test regarding prison officials' claims that, although ineffective, reasonable attempts were made to remediate the harm, claims that would be beyond his scope of knowledge or ability to effectively challenge. Applying even an objectively reasonable standard to a litigant who would never have the means to satisfy it constitutes an ineffective attempt to create the appearance of due process, without actual due process.

Thus, Mr. Mighty contends that the district court erred when it dismissed his petition on Eighth Amendment grounds because first, the effects of the coronavirus pandemic do not fit within the constitutional framework of "punishment" and are therefore not amenable to an Eighth Amendment analysis and second, to the extent that the actions or failures of prison officials to act can be considered "punishment" for a constitutional analysis, there is no principled basis for the varying tests for the treatment of pre-conviction versus post-conviction detainees. To the extent a

13

constitutional analysis may be applied at all, petitioner's claims (and the claims of those similarly situated) should be evaluated based on the totality of the circumstances applying the Fourteenth Amendment Due Process Clause test for reasonableness of the prison officials' response to these conditions of confinement that do not fall within the constitutional definition of "punishment."

## CONCLUSION

For all of these reasons, the district court's order dismissing the petition should be vacated and the matter remitted to the district court for consideration of whether petitioner's conditions of confinement during the COVID pandemic are objectively unreasonable in violation of the Due Process Clause of the 14th Amendment.

Dated: June 21, 2021

Respectfully submitted,

s/Donald M. Thompson
Attorney for Edward Mighty
16 West Main Street, Suite 243
Rochester, New York 14614
(585) 423-8290

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,821 words total, including those parts of the brief that could be exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). The brief has been prepared in a proportionally spaced typeface using WordPerfect Office x9 in Times New Roman font, 14 point size and complies the typeface requirements of Federal Rule of Appellate Procedure 32(a)(2) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

s/Donald M. Thompson
Attorney for Edward Mighty

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2021, I electronically filed the foregoing brief and addendum with the Clerk of the Court using the CM/ECF system, which would then electronically notify the CM/ECF counsel of record in this case.

s/Donald M. Thompson
Donald M. Thompson, Esq.
Attorney for Edward Mighty

15